IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DE'ANDRE STARNES,                    )
                                     )
            Plaintiff,               )
                                     )
     v.                              )          1:17CV495
                                     )
CONDUENT INCORPORATED and            )
XEROX COMMERCIAL SERVICES, LLC,      )
                                     )
            Defendants.              )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

        Presently before this court is a Motion to Compel
Arbitration and Dismiss or in the Alternative, to Stay
Proceedings Pending Arbitration, filed by Defendants Conduent
Incorporated ("Conduent") and Xerox Commercial Services, LLC
("XCS") (collectively, "Defendants"). (Doc. 12.) Pro se
Plaintiff De'Andre Starnes ("Plaintiff") responded, (Doc. 15),
and Defendants replied, (Doc. 17). Plaintiff then filed a second
response raising new arguments, (Doc. 20), and Defendants filed
a Motion for Leave to File Sur-Reply Memorandum, (Doc. 21). Also
before the court is Plaintiff's Motion to Demand Jury Trial.
(Doc. 16.) For the following reasons, Defendants' motion to file
a sur-reply, (Doc. 21), will be granted, Defendants' motion to

compel arbitration, (Doc. 12), will be granted, and Plaintiff's
motion for a jury trial, (Doc. 16), will be denied.

## I.   <u>BACKGROUND</u>

Plaintiff, proceeding <u>pro se</u>, filed this Complaint against
his employer,[1] bringing claims under the Family Medical Leave Act
("FMLA") and the Americans with Disability Act Amendments Act of
2008 ("ADAAA") as well as claims of discrimination based upon
sex and race. (See Complaint ("Compl.") (Doc. 1) at 1-4.)[2] This
court has jurisdiction. <u>See</u> 28 U.S.C. § 1331.

Plaintiff specifically alleges that he "was denied timely
access to reasonable accommodations" by his employer, in
violation of FMLA and the ADAAA. (Compl. (Doc. 1) at 3.)
Plaintiff further alleges that he has "spoken with a coworker
[who] did not have these issues when she took time off for her
medical issues[,]" (<u>id.</u>), giving rise to the claims of
discrimination.

---

[1] XCS was a subsidiary of Xerox Business Services, which was
itself a subsidiary of Xerox Corporation. (<u>See</u> Defs.' Mot. to
Compel Arbitration & Dismiss or in the Alternative, to Stay
Proceedings Pending Arbitration ("Defs.' Mot."), Ex. A,
Declaration of Shirley Pierce (Doc. 12-2) at 1-2.) XCS was spun
off to Conduent, Inc. (<u>Id.</u>)

[2] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

Defendants responded by moving to compel arbitration. (Defs.' Mot. to Compel Arbitration & Dismiss or in the Alternative, to Stay Proceedings Pending Arbitration ("Defs.' Mot.") (Doc. 12).) In support of the motion, Defendants submitted the declaration of Shirley Pierce, Vice-President of Human Resources for Conduent Business Services, LLC. (Defs.' Mot., Ex. A (Doc. 12-2).) Pierce describes Plaintiff's application for employment. The application by Plaintiff was made in 2015 "utilizing Defendants' electronic application and new hire onboarding process." (Id. at 3.) According to Pierce, applicants "electronically acknowledge" and agree to company policies, including the Dispute Resolution Plan and Rules ("DRP"). (Id. at 2-3.)

The DRP provides that it "applies to any [d]ispute." (Defs.' Mot., Ex. A-1 (Doc. 12-3) at 8.) A "dispute" is defined as

> all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute, regulation, or ordinance, or some other law, between persons (which include Employees, Applicants and the Company) bound by the DRP or by an agreement to resolve Disputes under the DRP, or between a person bound by the DRP and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to:
>
> ....

7.    Any other matter related to or concerning
              the relationship between the Applicant and
              the Company and/or the Employee and the
              Company alleging violation of any federal,
              state or other governmental law, statute,
              regulation, or ordinance, or common law, or
              contract violation, including but not
              limited to the Age Discrimination in
              Employment Act, Title VII of the Civil
              Rights Act of 1964, as amended, the
              Americans with Disabilities Act, the Family
              Medical Leave Act, the Fair Labor Standards
              Act, the Employee Retirement Income Security
              Act ("ERISA"), the Uniformed Services
              Employment Reemployment Rights Act
              ("USERRA"), and the Worker Adjustment
              Retraining and Notification Act ("WARN"),
              including, by way of example and without
              limitation, allegations of: unlawful
              retaliation, including whistleblower
              retaliation, discrimination or harassment
              based on race, sex, religion, creed, color,
              marital status, sexual orientation,
              citizenship, national origin, age, veteran
              or military status, disability status, or
              other legally protected characteristics;
              wrongful discharge; constructive discharge;
              workers' compensation retaliation;
              defamation; fraud; invasion of privacy;
              infliction of emotional distress; promissory
              estoppel; equitable estoppel; negligence,
              negligent misrepresentation; breach of
              contract; quasi-contract; equitable relief;
              failure to pay wages including overtime;
              claims for benefits, or membership with
              regard to any employee benefit plan[.]

(Id. at 6-7.) The DRP provides certain processes that may be

utilized such as the Open Door process or the Internal

Conference option. (Id. at 8.) The DRP then states that "[t]o

the extent allowed under the law, each Dispute not otherwise

resolved by the Parties shall be arbitrated on an individual basis." (Id.)

According to Pierce, Plaintiff "affirmatively agreed to be bound by the DRP in order for his application for employment to be considered." (Defs.' Mot., Ex. A (Doc. 12-2) at 3.) Following Plaintiff's receipt of an offer of employment, Plaintiff electronically signed several documents (the "Offer Paperwork"), including an "Offer Acknowledgment Form," a three-page "Acknowledgement of Application of Employment," and an "Agreement to be Bound by the Xerox Business Services Dispute Resolution Plan and Rules ("DRP") Otherwise Referred to as the Offeree Arbitration Agreement or 'Agreement.'" (See id. at 3-4.) Of particular note, the Offer Acknowledgment Form, signed electronically by Plaintiff, contains the following provision:

> Having been accepted for employment and as part of my acceptance, I CONSENT TO THE EXCLUSIVE **FINAL AND BINDING RESOLUTION BY ARBITRATION** UNDER THE DRP **OF ALL DISPUTES (as defined in the DRP) INCLUDING LEGAL CLAIMS,** past, present or future, arising out of, relating to, or concerning my employment with Xerox Business Services, LLC . . . .
>
> TO THE EXTENT ALLOWED UNDER THE LAW, AND EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT OR THE DRP, XBS AND I AGREE THAT:
>
> - **DISPUTES WILL BE ARBITRATED RATHER THAN DECIDED BY A COURT OR JURY. I AM WAIVING MY RIGHT TO A JUDGE OR JURY TRIAL.**

(Defs.' Mot., Ex. A-3 (Doc. 12-5) at 9-10.) The copy reflects a signature of "De Andre Starnes" with a date of September 26, 2015, and a specific IP Address. (<u>Id.</u> at 12.)

Pierce describes the electronic online process as one in which Plaintiff was required to create and utilize a "personally created, private password" in order to complete the application process. (Defs.' Mot., Ex. A (Doc. 12-2) at 3.) The documents electronically signed by Plaintiff were all executed using the personal, private password that was not accessible to Defendants. (<u>Id.</u> at 3-4.)

## II. <u>DEFENDANTS' MOTION FOR LEAVE TO FILE A SUR-REPLY</u>

Defendants move for leave to file a sur-reply in light of Plaintiff's filing of a second response to Defendants' motion to compel arbitration. (<u>See</u> Defs.' Mot. for Leave to File Sur-Reply Mem. (Doc. 21) at 1.) Plaintiff did in fact file a second response, (Pl.'s Reply (Doc. 20)), raising new arguments and expanding upon arguments made in the first response, after Defendants' reply was filed. (<u>Compare</u> Pl.'s Resp. (Doc. 15), <u>with</u> Pl.'s Reply (Doc. 20).)

Plaintiff's second response is clearly improper. Local Rule 7.3 controls motion practice and permits a motion and brief, LR 7.3(a), a response, LR 7.3(f), and a reply brief, LR 7.3(h). Plaintiff is not permitted to file serial responses to a motion.

This court has considered simply striking Plaintiff's second response. However, Plaintiff is proceeding pro se and is not held to the same high standards as attorneys. See Hughes v. Rowe, 449 U.S. 5, 10 n.7 (1980). While Plaintiff's clear failure to follow the rules is not acceptable[3], in this instance, the court will accept Plaintiff's second response and, in the interest of fairness, permit the filing of Defendants' sur-reply.

Plaintiff then filed a third memorandum in response to the motion to compel arbitration. (Pl.'s Mem. (Doc. 23).) Even allowing for Plaintiff's pro se status, this court cannot find any basis upon which to conclude that a pro se party would genuinely or reasonably believe these types of serial filings are permissible. In order to avoid depriving Defendants unfairly of an opportunity to respond to Plaintiff's arguments, this third memorandum will only be considered to the extent it cites further legal authority in support of arguments previously made in the first two responses.

---

[3] Plaintiff, like many pro se parties, has shown some ability to substantively research and cite cases in support of favorable legal analysis. However, also like many pro se parties, Plaintiff does not appear to have researched applicable procedural rules. While not held to the same standards as attorneys, "pro se litigants are not entitled to a general dispensation from the rules of procedure[.]" Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994).

## III. **DEFENDANTS' MOTION TO COMPEL ARBITRATION AND PLAINTIFF'S MOTION FOR A JURY TRIAL**

Defendants move to compel arbitration pursuant to 9 U.S.C. § 4 and to dismiss Plaintiff's Complaint, or in the alternative, to stay Plaintiff's claims pending arbitration pursuant to 9 U.S.C. § 3. (Defs.' Mot. (Doc. 12) at 1.)

### A. **Legal Standard**

Under the Federal Arbitration Act ("FAA"), a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal policy strongly favors arbitration, and the FAA represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

To compel arbitration under § 4 of the FAA, a litigant must show "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Adkins v. Labor Ready,

Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (citation omitted).
The parties must have entered into a valid agreement to
arbitrate, and the dispute in question must fall within the
scope of the arbitration agreement. Chorley Enters., Inc. v.
Dickey's Barbecue Rests., Inc., 807 F.3d 553, 563 (4th Cir.
2015) (citation omitted). Dismissal may be appropriate if all
claims asserted in a complaint are subject to arbitration.
Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252
F.3d 707, 709-10 (4th Cir. 2001).

B.    **Analysis**

1.    **Existence of a Dispute Between the Parties**

The first element Defendants must show under Adkins, the
existence of a dispute between the parties, is undisputed.
Plaintiff filed suit raising a number of claims arising during
his employment and alleging damages. Defendants have responded
by moving to compel arbitration. Therefore, a dispute exists
between the parties.

2.    **Written Agreement that Includes an Arbitration
Agreement Purporting to Cover the Dispute**

As to the second element under Adkins, the issue of whether
an arbitration agreement exists between the parties, is
generally a question of state contract law. See First Options of
Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Adkins, 303 F.3d

at 501 ("Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation."). "We apply ordinary state law principles governing the formation of contracts, including principles concerning the 'validity, revocability, or enforceability of contracts generally.' We also apply the federal substantive law of arbitrability, which governs all arbitration agreements compassed by the FAA." Muriithi v. Shuttle Express, Inc., 712 F.3d 173, 178-79 (4th Cir. 2013) (citations omitted).[4] In considering these principles,

> "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." For instance, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."

Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (citations omitted).

---

[4] Although the online nature of the contract could suggest a choice of law issue, no party disputes that North Carolina law applies. In North Carolina, the place where a contract is formed is determined by the "place at which the last act was done by either of the parties essential to a meeting of minds." See Key Motorsports, Inc. v. Speedvision Network, L.L.C., 40 F. Supp. 2d 344, 347 (M.D.N.C. 1999) (quoting Fast v. Gulley, 271 N.C. 208, 212, 155 S.E.2d 507, 510 (1967)). It appears Plaintiff's signature in North Carolina was the last act done essential to a meeting of the minds.

Like the federal government, see Muriithi, 712 F.3d at 179, North Carolina has a strong public policy favoring arbitration and, where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration. Martin v. Vance, 133 N.C. App. 116, 120, 514 S.E.2d 306, 309 (1999).

The parties do not dispute the interpretation of the language of any of the documents at issue. Instead, Plaintiff raises or disputes certain factual matters relating to the creation and formation of an arbitration agreement. Plaintiff alleges that the webpage wherein he was required to acknowledge reading the DRP did not contain a link to the DRP, that he had no opportunity to bargain for his interests, that the recruiter threatened him with termination, and that he experienced duress. (Pl.'s Resp. (Doc. 15) at 2.) Plaintiff further argues that notarized certifications of the documents have not been provided, the documents are not signed by Defendants, no consideration was provided, and the promises are illusory due to the employer's unilateral right to modify the plan. (Id. at 8-9; see generally Pl.'s Reply (Doc. 20).) Plaintiff summarily "den[ies] that an agreement to arbitrate was formed between myself and the defendants and demand[s] a jury trial." (Mot. to Demand Jury Trial (Doc. 16) at 1.)

In deciding a motion to compel arbitration, "courts apply a standard similar to that applicable to a motion for summary judgment." Minter v. Freeway Food, Inc., No. 1:03CV00882, 2004 WL 735047, at *2 (M.D.N.C. Apr. 2, 2004) (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)). Summary judgment is proper when the moving party demonstrates with specific evidence "that there is no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a), (c)(1)(A); see Baldwin v. City of Greensboro, 714 F.3d 828, 833 (4th Cir. 2013).

With respect to the right to a jury trial, the Fourth Circuit has explained that the FAA provides this right

> when "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue." 9 U.S.C. § 4 (1994). However, "[a] party resisting arbitration cannot obtain a jury trial merely by demanding one; rather he bears the burden of showing that he is entitled to a jury trial under § 4 of the [Act]". "To establish a genuine issue entitling a party to a jury trial, 'an unequivocal denial that the agreement [to arbitrate] had been made [is] needed, and some evidence should [be] produced to substantiate the denial.'"

Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 352 n.3 (4th Cir. 2001) (second and third citations omitted). "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute

for trial." <u>Tinder v. Pinkerton Sec.</u>, 305 F.3d 728, 735 (7th Cir. 2002) (citation omitted).

Here, Defendant has put forward evidence including Pierce's declaration, (Defs.' Mot., Ex. A (Doc. 12-2)), made under penalty of perjury under 28 U.S.C. § 1746. (<u>Id.</u> at 1.) Plaintiff denies that an agreement to arbitrate exists and states that "all statements made by me, under the penalty of perjury, are true and correct[,]" (Mot. to Demand Jury Trial (Doc. 16) at 2), but failed to submit a declaration or other evidence in response to Defendants' motion. Nevertheless, even construing Plaintiff's <u>pro se</u> pleadings as factual statements, Plaintiff fails to raise a genuine issue of material fact sufficient to defeat Defendants' motion or to entitle Plaintiff to a jury trial.

Most notably, Plaintiff does not dispute or deny the critical fact that the employment documents were signed online by Plaintiff using a personal, private password. Plaintiff's conclusory allegations that "Mrs. Pierce has failed to produce notarized certifications as to the forensic integrity of the documents submitted" and that Plaintiff "question[s] the authenticity of the documents, and Mrs. Pierce's

qualifications[,]" (Pl.'s Resp. (Doc. 15) at 8), fall short of raising genuine issues of material fact.[5]

Next, Plaintiff states that he completed the required paperwork after accepting employment, rather than before. (See Pl.'s Resp. (Doc. 15) at 2 ("During the hiring process, after accepting the job, I was given access to Xerox's online new-hire packet to complete the required paperwork.").) However, the documents reflect that Plaintiff, using his private, personal password, executed the documents, accepted the offer of employment, and signed and dated the forms all on September 26, 2015. (See Defs.' Mot., Ex, A-3 (Doc. 12-5) at 1, 4, 6, 8, 12, 13.) Plaintiff does not dispute this fact. The first document, "Offer Acknowledgement Form," lists the employment start date as October 9, 2015. (See id. at 1.)

Plaintiff points to Defendants' document showing "activity that occurred on the record as early as June and July of 2015[,]" (Pl.'s Resp. (Doc. 15) at 8), but this document reflects only dates pertaining to a screening assessment in Plaintiff's application for employment, (Defs.' Mot., Ex. A-2 (Doc. 12-4) at 8-9). Additionally, Plaintiff does not dispute

---

[5] Plaintiff's objections with respect to authenticity are more in the nature of challenges to the sufficiency of the evidence but in any event are insufficient to raise an issue of fact.

that he, as part of completing that document, acknowledged that

he agreed to be bound to Defendants' dispute resolution plan.

(Id. at 8-9.) Plaintiff's general allegation is not supported by

competent evidence and is undermined by Plaintiff's

acknowledgement of the October start date by electronic

signature on September 26, 2015. (See Defs.' Mot., Ex. A-3 (Doc.

12-5) at 1.)

Next, Plaintiff suggests he did not receive the DRP by

vaguely stating that "[o]ne of the web pages presented

information where I was required to acknowledge that I read the

DRP. The page did not present a link to the DRP." (Pl.'s Resp.

(Doc. 15) at 2; see also id. at 9 ("I was not presented with a

link to the Dispute Resolution Plan.").) Plaintiff's allegations

are insufficient to create a genuine issue of material fact as

to the existence of an agreement to arbitrate for several

reasons.

First, Plaintiff does not deny that he was asked to

acknowledge that he read the DRP, nor does he deny that he

indeed acknowledged he had read, reviewed, and agreed to the

DRP. As to whether Plaintiff actually received the DRP, this

court does not find Plaintiff's statement contrary to Pierce's

declaration, which states that "[a]n electronic link to a

complete copy of the DRP was provided with the Arbitration

Agreement." (Defs.' Mot., Ex. A (Doc. 12-2) at 4.) Plaintiff's allegation that no link was provided on an unidentified web page is too lacking in any description to contradict Pierce's declaration, especially when contrasted to Plaintiff's acknowledgment in the employment documents that he had "received and read or ha[s] had the opportunity to read this Agreement and the attached and/or electronically linked DRP." (Defs.' Mot., Ex. A-3 (Doc. 12-5) at 12.) Plaintiff's allegations are only sufficient to dispute, at most, whether he received a link to the DRP on an unidentified web page.

Second, Pierce describes a very specific "onboarding process" in which Plaintiff first acknowledged the DRP in the "Policy Consent" section of his application, (Defs.' Mot., Ex. A (Doc. 12-2) at 3; Ex. A-2 (Doc. 12-4) at 7), the "Arbitration Agreement" section of his Offer Paperwork, (Id., Ex. A (Doc. 12-2) at 4; Ex. A-3 (Doc. 12-5) at 9-12), and the Employee Guidebook, (Id., Ex. A (Doc. 12-2) at 4-5; Ex. A-5 (Doc. 12-7) at 4). None of the facts, as described by Pierce, are specifically denied or disputed by Plaintiff. Even if Plaintiff did not receive a "link to the DRP" on a non-specified web page, that allegation fails to rebut Pierce's declaration and Plaintiff's acknowledgement that he had read the DRP as

contained in the documents that he electronically signed.
(Defs.' Mot., Ex. A-3 (Doc. 12-5) at 12.)

Third, even assuming a dispute of fact arises as to whether
the DRP link was included in Plaintiff's electronic application
packet, the Acknowledgement of Dispute Resolution Agreement form
acknowledged and signed by Plaintiff contains an express
arbitration agreement, stating as follows:

> Having been accepted for employment and as part of my
> acceptance, I CONSENT TO THE EXCLUSIVE **FINAL AND
> BINDING RESOLUTION BY ARBITRATION** UNDER THE DRP **OF ALL
> DISPUTES (as defined in the DRP) INCLUDING LEGAL
> CLAIMS,** past, present or future, arising out of,
> relating to, or concerning my employment with Xerox
> Business Services, LLC . . . .

(Defs.' Mot., Ex. A-3 (Doc. 12-5) at 9.) Plaintiff does not
deny, or dispute, that this arbitration agreement was included
in the materials he acknowledged and signed. The law of North
Carolina is well established that persons have a duty to read
and understand the contracts they sign. See Leonard v. S. Power
Co., 155 N.C. 10, 10, 70 S.E. 1061, 1063 (1911) ("[T]he law will
not relieve one who can read and write from liability upon a
written contract, upon the ground that he did not understand the
purport of the writing, or that he has made an improvident
contract, when he could inform himself and has not done so.").

Plaintiff's arguments, even accepting his statements as
fact for purposes of this motion, do not create a material issue

of fact. This court finds that Plaintiff reviewed and accepted the conditions of his employment prior to his employment with Defendants; those conditions of employment included, <u>inter alia</u>, the dispute resolution process as described in the DRP and an arbitration agreement; and Plaintiff had knowledge of and the opportunity to review the DRP and arbitration agreement prior to and as a condition of his employment.

Next, Plaintiff suggests the arbitration agreement was not supported by consideration. (Pl.'s Resp. (Doc. 15) at 8-9.) This court disagrees.

An arbitration agreement is supported by adequate consideration "where both parties agree[] to be bound by the arbitration process." <u>Johnson v. Circuit City Stores</u>, 148 F.3d 373, 378 (4th Cir. 1998); <u>see</u> <u>Martin</u>, 133 N.C. App. at 122, 514 S.E.2d at 3109 ("Mutual binding promises provide adequate consideration to support a contract."). Furthermore, continued employment is sufficient consideration with respect to an arbitration agreement, which is required to be in writing but not signed. <u>Howard v. Oakwood Homes Corp.</u>, 134 N.C. App. 116, 121-22, 516 S.E.2d 879, 883 (1999).

Defendants agreed to be bound by the same terms in the Arbitration Agreement, agreeing to arbitrate disputes rather than submit them to a court or jury. (<u>See, e.g.</u>, Defs.' Mot.,

Ex. A-3 (Doc. 12-5) at 10.) This mutual agreement to be bound is sufficient consideration. This court finds, both as a matter of fact and law, that Plaintiff applied for employment with Defendants, that Defendants extended Plaintiff an offer of employment subject to certain conditions including, <u>inter alia</u>, an agreement to arbitrate, and Plaintiff accepted that offer. An agreement to arbitrate exists between the parties.

Next, Plaintiff raises, at least generally, the issue of duress. (<u>See, e.g.</u>, Pl.'s Resp. (Doc. 15) at 2 ("Prior to me gaining access to the intake website, the recruiter working with me threatened my position with termination. . . . Like myself, [a] typical person would experience a certain amount of duress and feel forced to sign the agreement . . . .").) Plaintiff also alleges issues as to the illusory nature of the contract. (<u>See id.</u> at 9-10.)

In North Carolina, "[a] threatened violation of a contractual duty ordinarily is not in itself coercive, but if failure to receive the promised performance will result in irreparable injury to business, the threat may involve duress." <u>Rose v. Vulcan Materials Co.</u>, 282 N.C. 643, 665, 194 S.E.2d 521, 536 (1973) (citation omitted). To establish economic duress, parties must show:

> (1) a threatened breach that the promised performance
> will not be received and that breach will result in
> irreparable injury; (2) the threat is effective
> because of economic power not derived from the
> contract itself; (3) the threatened party could not
> enter into a contract with a third party replacing the
> threatening party . . . ; and (4) there is no
> immediate legal remedy available.

Superior Performers, Inc. v. Meaike, No. 1:13CV1149, 2015 WL
3823818, at *4 (M.D.N.C. June 19, 2015) (citation omitted).
Plaintiff's allegation of termination if he did not execute the
agreement, standing alone, fall far short of establishing a
defense based upon economic duress.

Finally, Plaintiff contends that the agreement is
unenforceable because it allowed the employer to unilaterally
revoke or modify its terms with notice and because he had no
power to attempt to bargain for better terms. (Pl.'s Resp. (Doc.
15) at 9-10; Pl.'s Reply (Doc. 20) at 2-3.) A promise is
illusory if a defendant reserves "an unlimited right to
determine the nature or extent of his performance[.]"
Wellington-Sears & Co. v. Dize Awning & Tent Co., 196 N.C. 748,
752, 147 S.E. 13, 15 (1929). While the DRP does allow Defendants
to amend the DRP on thirty days' notice, that power is expressly
limited as the amendment does not "apply to a Dispute that was
made known to the Company prior to the time the amendment
becomes effective." (Defs.' Mot., Ex. A-1 (Doc. 12-3) at 10.)

For the reasons explained in Curtis v. GE Capital Corp., Civil
No. 5:12CV133–RLV, 2013 WL 4212932, at *4 (W.D.N.C. Aug. 15,
2013), and Joyner v. GE Healthcare, C.A. No. 4:08–2563–TLW–TER,
2009 WL 3063040, at *4 (D.S.C. Sept. 18, 2009), this court finds
the arbitration agreement is not illusory. The modification
provision does not provide Defendants with "an unlimited right
to determine the nature or extent of [their] performance[.]" See
Wellington-Sears, 196 N.C. at 752, 147 S.E. at 15.

In the case at hand, this court finds the arbitration
agreement, as expressly stated in the employment documents and
the DRP, constitutes a valid contract between the parties. As to
the second part of the second Adkins element - whether the
agreement includes an arbitration provision that purportedly
covers the dispute - the requirement is also satisfied. Claims
subject to arbitration under the DPR specifically include

> [a]ny other matter related to or concerning the
> relationship between the Applicant and the Company
> and/or the Employee and the Company alleging violation
> of any federal, state or other governmental law,
> statute, regulation, or ordinance, or common law, or
> contract violation, including but not limited to . . .
> Title VII of the Civil Rights Act of 1964, as amended,
> the Americans with Disabilities Act, the Family
> Medical Leave Act, . . . including, by way of example
> and without limitation, allegations of: unlawful
> retaliation, including whistleblower retaliation,
> discrimination or harassment based on race, sex,
> religion, creed, color, marital status, sexual
> orientation, citizenship, national origin, age,
> veteran or military status, disability status, or

other legally protected characteristics; wrongful
                    discharge; [or] constructive discharge [.]

(Defs.' Mot. (Doc. 12-3) at 6-7.) Plaintiff's FMLA, ADAAA, and

discrimination claims fall squarely within the plain language of

the arbitration provision.

### 3.    Relationship to Interstate Commerce

     The third requirement under Adkins, that the transaction

have a relationship to interstate or foreign commerce, evidenced

by the agreement, is also undisputed. "[T]he reach of the [FAA]

is broad. . . . The Supreme Court has interpreted this provision

as exercising the full scope of Congress's commerce-clause

power." Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d

690, 697 (4th Cir. 2012) (citations omitted). While diversity of

citizenship alone is not enough to classify a transaction, "the

FAA does not impose a burden upon the party invoking the FAA to

put forth specific evidence proving the interstate nature of the

transaction," nor does a court need to "identify any specific

effect upon interstate commerce, so long as 'in the aggregate

the economic activity in question would represent "a general

practice . . . subject to federal control."'" Id. at 697-98

(citations omitted).

     The nature of the employment agreement itself reflects an

effect on interstate commerce, as Plaintiff, a North Carolina

resident, was employed to work from his home, (Defs.' Mot., Ex.
A-2 (Doc. 12-4) at 1), in a remote tech support capacity, (Pl.'s
Resp. (Doc. 15) at 1), for a company serving facilities and
people inside and outside North Carolina utilizing interstate
mail and travel systems, (Defs.' Mot., Ex. A (Doc. 12-2) at 2).
In the absence of a response or objection from Plaintiff, this
court accepts the representations of interstate commerce set
forth in the agreement. Further, but not dispositive, the
agreement is between a North Carolina individual and companies
in New Jersey and Connecticut. (Compl. (Doc. 1) at 1-2.) In
concert, these factors show that the third requirement is
satisfied.

### 4.  Refusal to Arbitrate

Finally, Plaintiff has refused to arbitrate the dispute.
This is clear as Plaintiff has not engaged in the process for
arbitration set forth in the agreement and has instead filed
suit. Defendants have filed a declaration from Maryjo Lovie
Roberts explaining in some detail the efforts of Defendants to
engage in arbitration with Plaintiff and Plaintiff's refusal to
do so. (See generally Defs.' Mot., Ex. B (Doc. 12-8).)

Thus, the four elements for compelling arbitration under
the FAA have been met in this case and this court will grant
Defendants' motion to compel arbitration. Plaintiff has not met

his burden to entitle him to a jury trial under the FAA, and therefore, Plaintiff's motion demanding a jury trial will be denied.

## C.   **Stay Pending Arbitration**

"[W]here a valid arbitration agreement exists and the issues in a case fall within its purview[,]" <u>Adkins</u>, 303 F.3d at 500 (citations omitted), the district court shall, upon application of one of the parties, "stay the . . . action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3. As found herein, a valid, written arbitration agreement exists between the parties, and all of Plaintiff's claims fall within the substantive scope of the agreement.

Despite the language of § 3, courts, including the Fourth Circuit, have noted that dismissal is a proper remedy when all claims presented in a lawsuit are arbitrable. <u>See, e.g.</u>, <u>Choice Hotels</u>, 252 F.3d at 709-10 (citing <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir. 1992)). Here, Defendants move to dismiss the case.

Neither party has presented a compelling reason for this court to stay this case pending arbitration. All of Plaintiff's claims are arbitrable, there is no suggestion any enforcement of an arbitration award by this court is necessary, and Plaintiff's

prior refusals to arbitrate do not suggest this court should stay this matter for an indefinite period while Plaintiff considers whether to proceed with his claims in arbitration. Accordingly, this case should be dismissed.

### D.    <u>Defendants' Claim for Attorneys' Fees</u>

In addition to compelling arbitration, Defendants seek attorneys' fees pursuant to Fed. R. Civ. P. 11(b). While Defendants may be justifiably frustrated with having to defend its agreed-upon arbitration provision, Rule 11 directs the inquiry to an opposing party's knowledge, information, and belief. Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . ."). Plaintiff does not deny being advised of his arbitration obligations by opposing counsel. Nevertheless, in nearly every contractual dispute, parties are in disagreement over the meaning and requirements of contractual terms. Under the circumstances here, this court does not find an award under Rule 11 appropriate.

## IV.   <u>CONCLUSION</u>

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants' motion to file sur-reply, (Doc. 21), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' motion to compel arbitration and dismiss, (Doc. 12), is **GRANTED**, and that this action is hereby **DISMISSED WITHOUT PREJUDICE** to the arbitration proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's motion for jury trial, (Doc. 16), is **DENIED**.

A judgment in accordance with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 18th day of July, 2018.

_____
United States District Judge